**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ROGER WILLIAMS UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>ROGER WILLIAMS UNIVERSITY FACULTY ASSOCIATION (NEARI/NEA)<br><br>Defendant. | Civil Action No.<br>CA 07 440ML |

## COMPLAINT TO VACATE ARBITRATION AWARD

Plaintiff Roger Williams University ("RWU" or the "University"), by and through its undersigned counsel, files this Complaint pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 10 of the Federal Arbitration Act, 9 U.S.C. § 10(a)-(e), to vacate an arbitrator's award, and for related declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

### Introduction

1. By way of a written decision dated November 2, 2007, Arbitrator Lawrence T. Holden, Jr. issued a final and binding arbitration award in connection with a grievance filed against the University by Defendant Roger Williams University Faculty Association (NEARI/NEA) ("RWUFA" or the "Union"). This award was received by the University on November 5, 2007. This is an action to vacate that arbitration award.

## The Parties

2. Plaintiff RWU is a private institution of higher education with its main campus located at One Old Ferry Road, Bristol, RI. Originally a junior college when founded, the institution has expanded and grown into a four year university with numerous graduate programs. It has approximately 4000 undergraduate students and approximately 230 full-time faculty members. The largest school within the University is the Feinstein College of Arts & Sciences, with about 95 full-time and 125 part-time faculty. The University is an employer within the meaning of 29 U.S.C. § 152(2) and engaged in a business affecting commerce.

3. Defendant RWUFA is the exclusive bargaining agent for teaching faculty, among others. It maintains a principal place of business at One Old Ferry Road, Bristol, RI. The Union is a labor organization in an industry affecting commerce within the meaning of 29 U.S.C. §§ 142(1), 142(3), and 152(5).

## Jurisdiction and Venue

4. This Court has jurisdiction over this matter and over defendant pursuant to 29 U.S.C. § 185, and 28 U.S.C. §§ 1331 and 1337.

5. Venue in this district is proper pursuant to 29 U.S.C. § 185(a) and (c), since the Union maintains its principal office in this district and/or is engaged in representing and acting for employee members within this district. Venue is also appropriate pursuant to the provision of 28 U.S.C. § 1391(b), as the events giving rise to this matter occurred in this district.

## The Agreement

6. At all times relevant to this action, the University and the Union have been parties to a Collective Bargaining Agreement ("CBA"), which, among other things, provides for arbitration of disputes between the parties. A copy of the CBA is attached hereto as **Exhibit A**.

7. Article III ("Rights and Responsibilities") of the CBA provides, in relevant part:

> It is recognized that RWU, through its Chief Executive Officer, has the authority and responsibility to effectively formulate the University's curriculum, budget, grading systems, admissions and matriculation standards, academic calendars, size of the student body, tuition and fees, hiring and termination and other traditional management functions.

* * *

8. Article VIII ("Appointment, Evaluation, Promotion and Tenure"), sets forth in detail, the criteria used by the University in determining whether a faculty member should be promoted and granted tenure. In sum, the probationary (i.e. tenure track) period usually runs for six years, with a tenure review in the sixth year. During a probationary faculty member's service, he or she is formally reviewed on a regular basis. Tenure at the University is earned after six years of service in a probationary status and after successfully completing an intensive review process. Pursuant to Article VII, Section D, faculty members are evaluated under four general performance areas: (1) teaching; (2) academic advising and program development; (3) scholarship, professional and creative activities; and (4) institutional and community service.

9. Article VIII, Section A.3 states as follows:

> Probationary appointments are tenure track appointments given to those full-time faculty members who are expected to apply for a position with tenure upon successful completion of the requirements for tenure. Except as provided below, the first six (6) years of full-time employment for tenure-track faculty members shall constitute a probationary period. Initial year employment for one (1) semester or less will not count toward the probationary period. However, newly appointed faculty members with prior full-time tenure track experience at another accredited college or university may be granted, at the discretion of the Chief Academic Officer at the time of initial appointment, up to three (3) years credit for that prior experience toward eligible service for promotion and tenure. Any credit for prior experience which is

allowed must be documented in writing in the faculty member's initial appointment letter, or it will be deemed that no such credit was given. Time under a visiting appointment shall be counted toward tenure, if continuous, at the discretion of the dean.

Probationary appointees are subject to the reappointment procedures outlined in this Article. During any probationary year employment may be terminated by the Chief Academic Officer, who will state the reason(s) for termination in writing. The reason(s) for termination may not be arbitrary or capricious.

Probationary MBUs who receive notice of non-reappointment during their fourth, fifth, or sixth year for performance (evaluation) reasons shall receive a terminal year.

10. Section B.3.i of Article VIII provides in pertinent part as follows:

Chief Executive Officer and Board of Trustees Determination

It is understood that the Chief Executive Officer (President) and, when applicable, the Board of Trustees, have the authority to make all final decisions with respect to promotion and tenure. Final promotion and tenure decisions are made by the President and the Board considering: (1) the criteria in this Agreement; (2) the recommendations of deans and the Chief Academic Officer; (3) the evaluative background of the candidate; and (4) the specifically identified interests of the University. Decisions regarding tenure and/or promotion will be communicated to such faculty members, in writing, by June 30. Because tenure can only be awarded upon the affirmative act of the Chief Executive Officer and the Board of Trustees, tenure cannot be awarded by default or omission of any action by or on behalf of RWU. The effective date of all promotions shall be the beginning of the Fall semester after the end of the academic year in which the consideration for the promotion was made.

A full-time faculty member who is not awarded tenure within the probationary period will be terminated from employment. As noted above the decision to deny tenure will be communicated by the Chief Executive Officer to such faculty members, in writing, in the final probationary year. Faculty members so notified may elect to work a terminal year, subject to Article IX. RWU may unilaterally grant tenure to a faculty member in the terminal year, which would otherwise be terminated, and such decision may not

> be grieved and/or arbitrated.
>
> Individuals refused tenure may utilize the grievance procedure if they believe their contractual rights to be violated.

11. Article IX ("Due Process") provides, in relevant part:

> A. No tenured MBU shall be dismissed without just cause. The termination of non-tenured MBU's shall not be arbitrary or capricious. Dismissal for purposes of this Agreement shall mean non-renewal of contract of a MBU or dismissal during the year of a MBU.[1]
>
> B. In the case of non-tenured appointments, notice of non-renewal of appointment, as defined in A. above, shall be given on or before April 15 of the Contract year.
>
> Non-tenured MBUs who receive notice of non-reappointment during their fourth, fifth, or sixth year for performance (evaluation) shall have the option of working a terminal year if the Chief Academic Officer is notified before June 1 of the year in which they are non-renewed...
>
> * * *
>
> D. Notice of dismissal shall contain the reason(s) for such dismissal.
>
> E. The MBU or the RWUFA may, within ten (10) working days after receipt of notice of dismissal, file a grievance under Article X of [the CBA].

12. Article X ("Grievance Procedure") details the grievance procedure agreed upon by the University and the Union. Among its provisions, it states that if the parties are not able to resolve their grievance themselves, the parties may "submit the grievance to arbitration before an impartial arbitrator, under the rules of the American Arbitration Association (AAA), whose decision shall be binding on both parties..." Article X, Section B further provides as follows:

---

[1] The term "MBU" is defined in the CBA to mean a member of the bargaining unit.

> The arbitrator shall not alter, add to or subtract from the terms of [the CBA] and shall render a written decision within thirty (30) days of the close of the arbitration hearing.

13. Article X, Section C also states, in part, that "[a]ny adjustment of a grievance shall be consistent with the terms of [the CBA]."

**The Subject of the Grievance**

14. On May 24, 2000, David Moskowitz was appointed to the University's Feinstein College of Arts & Sciences as an Assistant Professor of Political Science.

15. On April 14, 2006, Dr. Moskowitz was notified by Interim Provost Jeffrey B. Martin that he was denied tenure and would not be reappointed. In accordance with the CBA, Dr. Moskowitz received a terminal year of employment and left the University at the end of the 2006-2007 academic year (ending on June 30, 2007).

16. On April 17, 2006, the Union filed a grievance a Step 1 grievance over Dr. Moskowitz's non-reappointment.

17. The initial grievance was considered and denied by Provost Martin on May 9, 2006.

18. The grievance was pursued to the next level (Step 2), after which University President Roy J. Nirschel issued a June 6, 2006 written letter to Dr. Moskowitz outlining the reasons why tenure was denied by the University and denying the grievance.

**The Underlying Arbitration and Award**

19. The Union filed the grievance with the American Arbitration Association ("AAA") on June 9, 2006. Following AAA rules, the parties selected Lawrence T. Holden, Jr., Esq. as the impartial arbitrator in the case. Hearings were held on February 22, 2007, May 8,

2007, June 11, 2007, and June 18, 2007. Both the Union and the University were represented by counsel.

20. The issue presented to Arbitrator Holden was as follows: "Did the University act arbitrarily or capriciously in denying tenure to Professor David Moskowitz in April of 2006? If so, what shall be the contractually authorized remedy?"

21. The Union had the burden of proof at the hearing to prove the University had acted arbitrarily or capriciously in its denial of tenure.

22. Arbitrator Holden issued his award on or about November 2, 2007 (the "Award"). The University received the Award on November 5, 2007. A copy of the Award is attached hereto as **Exhibit B**.

23. In his Award, Arbitrator Holden sustained the grievance and found that the University "violated Art. VIII, Sec. B.3.i." (Award at p. 28). Arbitrator Holden concluded that the "University acted arbitrarily in denying tenure to Professor David Moskowitz in April of 2006."

24. Arbitrator Holden found that the University acted arbitrarily because there was "no evidence in this case that the President or the Board of Trustees made the final decision in the grievant's tenure/promotion case in accordance with the criteria contained in Art. VIII, Sec. B.3.i of the contract; further, there is no evidence that Provost Martin was authorized by the President or the Board to write a letter on their behalf detailing their judgment." (Award at p. 19).

25. Arbitrator Holden's decision to uphold the grievance was based entirely on this perceived administrative defect.

26. Although he discussed whether Dr. Moskowitz met the criteria for tenure, Arbitrator Holden did not find that the University had acted arbitrarily or capriciously in concluding that Dr. Moskowitz failed to meet the tenure criteria under the CBA.

27. At page 28 of the Award, Arbitrator Holden articulated the remedy as follows:

> For remedy the grievant shall be reinstated to probationary status for one more full academic year and shall have his case for tenure reviewed in accordance with the contractual criteria and the contractual process. The principle of a make whole remedy subject to the customary deductions shall apply in this case….

**COUNT I**

28. The University repeats and incorporates by reference the allegations contained in Paragraphs 1 through 27 of this Complaint.

29. The Award's conclusion that the University violated the CBA is in disregard to the explicit terms of the CBA.

30. The Award does not draw its essence from the CBA and Arbitrator Holden exceeded his authority in ruling that the University violated the CBA.

**COUNT II**

31. The University repeats and incorporates by reference the allegations contained in Paragraphs 1 through 30 of this Complaint.

32. The Award reinstates Dr. Moskowitz "to probationary status for one more full academic year" after which, Dr. Moskowitz will have "his case for tenure reviewed …" However, the CBA limits the tenure decision to no later than the sixth year of teaching, which Dr. Moskowitz has already completed. By adding the additional probationary year and the already concluded terminal year, the remedy imposed by Arbitrator Holden exceeds his authority

under the CBA by effectively adding greater rights to Dr. Moskowitz than are otherwise provided for under the CBA.

**COUNT III**

33. The University repeats and incorporates by reference the allegations contained in Paragraphs 1 through 32 of this Complaint.

34. Arbitrator Holden's award did not derive its essence from the collective bargaining agreement and Arbitrator Holden exceeded his authority by failing to recognize that President Nirschel's grievance response fully set forth the reasons for Dr. Moskowitz's tenure denial. The letter, introduced before Arbitrator Holden at the arbitration hearing, was dated June 6, 2006, fourteen (14) days before the June 30, 2006 deadline set forth in Article VIII, Section B.3.i of the parties' CBA, thereby reflecting the University's and the President's decision regarding Dr. Moskowitz's request for tenure.

**COUNT IV**

35. The University repeats and incorporates by reference the allegations contained in Paragraphs 1 through 34 of this Complaint.

36. Arbitrator Holden's award did not derive its essence from the collective bargaining agreement and Arbitrator Holden exceeded his authority because he improperly shifted the burden of proof in this matter from the Union to the University, and he otherwise ignored uncontroverted evidence in the record demonstrating that the University President had concurred in and approved the communication from the Provost to Dr. Moskowitz indicating the University's denial of tenure.

**COUNT V**

37. The University repeats and incorporates by reference the allegations contained in Paragraphs 1 through 36 of this Complaint.

38. Arbitrator Holden's award did not derive its essence from the collective bargaining agreement and Arbitrator Holden exceeded his authority because he improperly recognized an alleged failure of a ministerial action by the President (i.e., signing the initial tenure denial letter) that the Union had failed to raise during the initial steps of the grievance process set forth in Article X of the CBA.

**COUNT VI**

39. The University repeats and incorporates by reference the allegations contained in Paragraphs 1 through 38 of this Complaint.

40. Arbitrator Holden's failure to determine that the University did not act arbitrarily or capriciously in denying Dr. Moskowitz tenure otherwise exceeded the scope of his authority and did not draw its essence from the CBA which the arbitrator was empowered to enforce.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully prays that this Court:

(1) enter an order vacating the arbitrator's award, dismissing the Union's grievance and finding that the University did not violate the terms of the CBA;

(2) enter an order enjoining defendant from taking any action to enforce the arbitrator's award; and

(3) award such other and additional relief as this Court deems just and proper.

Respectfully Submitted,

ROGER WILLIAMS UNIVERSITY

By its attorneys,

Joseph P. McConnell (RI Bar No. 5086)
Jeffrey S. Siegel *(pro hac vice forthcoming)*
MORGAN, BROWN & JOY, LLP
200 State Street
Boston, MA 02109
(617) 523-6666

Dated: December 3, 2007