**IN THE UNITED STATES DISCTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **ROGER WILLIAMS UNIVERSITY,**<br><br>**Plaintiff/Defendant in Counterclaim,**<br><br>**v.**<br>**ROGER WILLIAMS UNIVERSITY FACULTY ASSOCIATION (NEARI/NEA)**<br><br>**Defendant/Plaintiff in Counterclaim.** | **C.A. No.: 07-440-ML-DLM** |

**STATEMENT OF CASE OF THE ROGER WILLIAMS UNIVERSITY FACULTY ASSOCIATION (NEARI/NEA)**

Defendant/Plaintiff in Counterclaim, the Roger Williams University Faculty Association (NEARI/NEA) (the "Union"), hereby files this "Written Statement of Case" pursuant to this Court's Notice of January 8, 2008. Pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, the Union seeks to confirm a labor arbitration award entered against the Plaintiff/Defendant in Counterclaim, Roger Williams University (the "University).

**A. The Collective Bargaining Agreement and the Award of Tenure**

At all pertinent times hereto, the Union and RWU were parties to a Collective Bargaining Agreement ("CBA"). Regarding a faculty member's obtaining tenure, there is a very detailed process enumerated within the CBA. This process includes a pre-established number of extensive reviews and, in most cases, culminates with a final tenure review and decision within the sixth year of a faculty member's employment. Throughout the reviews, a faculty member is evaluated in the following four (4) specific performance areas:

1. Excellence in teaching.
2. Academic advising and program development;
3. Scholarly, professional and/or creative activities; and
4. Institutional and/or community service.

Although, the University considers all of these performance areas, excellence in teaching is the primary criterion under the CBA.

Pursuant to Article VIII, §§ B.3.i and B.3.k of the CBA, only "the Chief Executive Officer (President) and, when applicable, the Board of Trustees, have the authority to make all final decisions with respect to promotion and tenure." Article VIII, Sections B.3.i and B.3.k further provide that final promotion and tenure decisions by the President and the Board of Trustees are made considering among other things, the recommendations of Deans and the Chief Academic Office (Provost). Moreover, those tenure decisions made by the President and/or Board of Trustees must be communicated to the faculty member, in writing, by June 30th.

## B. The Grievance

Moskowitz officially commenced his employment at RWU on August 28, 2000 as an Assistant Professor of Political Science. On or about April 14, 2006, the Interim Provost, Jeffrey B. Martin ("Martin"), denied tenure to Moskowitz and notified him that he would not be re-appointed. Martin's notification, specifically denied tenure to Moskowitz and formally notified Moskowitz that his employment was being terminated. Said notification did not state that Martin would be "recommending" to the President and/or Board of Trustees that Moskowitz be denied tenure and not be re-appointed. Recognizing that Martin had exceeded his authority in actually denying tenure to Moskowitz and terminating his employment, on April 17, 2006, the Union filed a Step I grievance.

On or about May 9, 2006, Martin denied the Step I grievance. The Union filed a Step II grievance, which was denied by the RWU's President, Roy J. Nirschel ("Nirschel") on June 6, 2006. Pursuant to the CBA, on or about June 9, 2006, the Union next filed the grievance with the American Arbitration Association ("AAA") and the matter was assigned to Arbitrator Holden. The issues presented to Arbitrator Holden were "Did the University act arbitrarily or capriciously in denying tenure to Professor Moskowitz in April of 2006? If so, what shall be the contractually authorized remedy?"

## C. The Arbitration Award in Favor of the Union

Arbitrator Holden resolved the grievance in favor of the Union and issued an Arbitration Award on November 2, 2007. Arbitrator Holden essentially found that RWU had acted

arbitrarily in denying tenure to Moskowitz because it had violated the CBA by not having the President make the final decision regarding Moskowitz's tenure. Arbitrator Holden determined that Moskowitz should be reinstated to his probationary status and undergo another tenure review in accordance with the contractual criteria and contractual process. Arbitrator Holden further determined that Moskowitz should be made whole, subject to the customary deductions.

Arbitrator Holden's factual findings in the Arbitration Award were consistent with the testimony and documentary evidence, which support his determination that RWU acted arbitrarily in denying tenure to Moskowitz. Moreover, the University's violation of the CBA was not merely a trivial and/or insignificant flaw. The President's role in making final tenure decisions is in no way a "ministrial action" as asserted by the University.

Prior to the 1995-1998 CBA, the President of RWU was not involved in tenure and/or promotion decisions. During the negotiations for the 1995-1998 CBA, the Union specifically proposed and the parties agreed that only the President and/or the Board of Trustees would have the authority to make all future tenure and/or promotion final decisions. This language and requirement was added to the CBA commencing with the 1995-1998 CBA. The Union negotiated this language because it believed tenure decisions to be so important as to require them to be made by the Chief Executive Officer (President). Additionally, the President's role in the tenure process creates another layer of review prior to tenure decisions.

In light of the evidence in this case and the applicable standard of review the Arbitration Award should be confirmed for the following reasons:

1. Nirschel's denial of the Union's Step II grievance under Article X of the 2004-2008 CBA did not substitute for and/or fulfill his or RWU's required contractual obligations under Article VIII, Sections B.3.i and B.3.k of the CBA.

2. Arbitrator Holden acted within his authority by issuing an award that draws its essence from the CBA and is based upon a passably plausible interpretation of the CBA.

3. The Arbitration Award it is not inconsistent with any applicable laws, Arbitrator Holden did not manifestly disregard the law, and the award was not completely irrational and/or should otherwise be enforced.

4. The University's appeal of and refusal to implement the Arbitration Award is frivolous, without merit, and solely intended for undue delay and in bad faith.

ROGER WILLIAMS UNIVERSITY
FACULTY ASSOCIATION (NEARI/NEA)

By its Attorney,

John E. DeCubellis, Jr., Esq. (RI Bar No. 3327)
General Counsel
NEARI
99 Bald Hill Road
Cranston, Rhode Island 02920
(401) 463-9630

Dated: January 30, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Statement of Case was mailed via regular mail to Joseph P. McConnell, Esq., MORGAN, BROWN & JOY, 200 State Street, Boston, MA 02109 on this 30th day of January, 2008.