**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **ROGER WILLIAMS UNIVERSITY,**<br><br>**Plaintiff/Counterclaim Defendant,**<br><br>**v.**<br><br>**ROGER WILLIAMS UNIVERSITY FACULTY ASSOCIATION (NEARI/NEA)**<br><br>**Defendant/Counterclaim Plaintiff.** | **07-440-ML-DLM** |

**DEFENDANT/COUNTERCLAIM PLAINTIFF'S**
**STATEMENT OF UNDISPUTED FACTS**
**PURSUANT TO LOCAL RULE Cv 56(a)**

Pursuant to L.R. Cv 56(a), Defendant/Counterclaim Plaintiff, Roger Williams University Faculty Association (NEARI/NEA) (the "Union"), hereby files its Statement of Undisputed Facts in support of its Motion for Summary Judgment and in opposition to Plaintiff/Counterclaim Defendant, Roger Williams University's (hereafter referred to as "RWU" or the "University") Motion for Summary Judgment. As specifically referenced, said undisputed facts are predominately derived from the factual findings of Arbitrator Lawrence T. Holden, Jr. in his November 2, 2007 Arbitration Award ("Award"). (A true and accurate copy of the Award was attached to RWU's Complaint and as Exhibit A to Attorney Joseph P. McConnell's Declaration in support of RWU's Motion for Summary Judgment), the Declaration of John E. DeCubellis, Jr., Esq. ("Declaration") and the attached exhibits presented during the arbitration hearings and attached thereto, and the Affidavit of Mel A. Topf (" Topf Affidavit").

1. The Union is the exclusive bargaining agent for the RWU faculty. (Complaint ¶ 3; Answer ¶ 3; Declaration ¶ 2).

**David Moskowitz's Academic and Teaching Experience**

2. David Moskowitz ("Moskowitz") obtained Bachelor of Arts degrees in Political Science and Psychology from the State University of New York ("SUNY") at Stony Brook in 1984. He also earned a Master's degree and Doctorate in Political Behavior and Political Psychology from SUNY at Stony Brook in 1987 and 1992, respectively. (Award at 1-2).

3. From 1984 through 1987, Moskowitz was a teaching assistant at SUNY. In 1988 and 1989, Moskowitz taught as an Adjunct Professor at Aldelphi University in its ABL program, which was a continuing education program for nontraditional students. (Award at 1-2).

4. In 1989, Moskowitz commenced his initial, full-time teaching position as an Assistant Professor of Political Science at Georgia Southern University ("Georgia Southern"), where he taught both undergraduate and graduate courses in a tenure track position from 1989 to 1993. While at Georgia Southern, Moskowitz was name "Professor of the Year" during the 1991-1992 academic year. (Award at 1-2).

5. In 1993, Moskowitz left Georgia Southern for a position as an Assistant Professor of Political Science at the University of North Carolina at Charlotte ("UNC Charlotte") where he taught in a tenure track position from 1993 to 2000. Moskowitz left his employment at UNC Charlotte to assume a tenure track position at RWU in 2000. Overall, Moskowitz has accrued more than twenty (20) years of teaching experience at the university level. (Award at 2).

**The Collective Bargaining Agreement and the Award of Tenure**

6. At all pertinent times hereto, Roger Williams University (hereafter referred to as "RWU" or the "University") and the Roger Williams University Faculty Association (NEARI/NEA) (the "Union") were parties to the 2004-2008 Collective Bargaining Agreement (the "CBA"). (A true and accurate copy of the CBA, which was Arbitration Joint Exhibit 4 ("Joint Ex. _"), is attached to the Declaration as Exhibit A). (Complaint , ¶ 6; Answer ¶ 6).

7. The CBA provides a very detailed process for a faculty member to obtain tenure. This process includes a pre-established number of extensive reviews and, in most cases, culminates with a final tenure review and decision within the sixth year of a faculty member's employment. Prior to being awarded tenure, faculty members serve in a probationary status under the CBA. (Joint Ex. 4 (CBA), attached to Declaration as Exhibit A, Article VIII at 24-38).

8. Throughout the reviews, faculty members (tenured and non-tenured) are evaluated in the following four (4) specific performance areas:

1. Excellence in teaching.
2. Academic advising and program development;
3. Scholarly, professional and/or creative activities; and
4. Institutional and/or community service.

(Award at 2; Joint Ex. 4 (CBA), attached to Declaration as Exhibit A, Article VIII at 24-38 and Article VIII, Section B 2 at 28-32).

9. Pursuant to the CBA, "[t]he tenure review process is a cumulative review of a faculty member's probationary years, and the faculty member must meet or exceed each of the four evaluative criteria in order to receive tenure." (Award at 2).

10. Although, the University considers all of these performance areas, excellence in teaching is the primary criterion under the CBA. (Joint Ex. 4 (CBA), attached to Declaration as Exhibit A, Article VIII, Section B 2 at 28).

11. Pursuant to the CBA, only "the Chief Executive Officer (President) and, when applicable, the Board of Trustees, have the authority to make all final decisions with respect to promotion and tenure." (Joint Ex. 4 (CBA), attached to Declaration as Exhibit A, Article VIII, §§ B.3.i and B.3.k at 37-38).

12. Article VIII, Sections B.3.i and B.3.k further provide that final promotion and tenure decisions by the President and the Board of Trustees are made considering among other things, the recommendations of Deans and the Chief Academic Office (Provost). (Joint Ex. 4 (CBA), attached to Declaration as Exhibit A, Article VIII, §§ B.3.i and B.3.k at 37-38).

13. Tenure decisions made by the President and/or Board of Trustees must be communicated to the faculty member, in writing, by June 30th. (Joint Ex. 4 (CBA), attached to Declaration as Exhibit A, Article VIII, § B.3.i at 37).

**<u>The Grievance</u>**

14. Moskowitz was hired by RWU as an Assistant Professor of Political Science commencing with the 2000-2001 academic year. (Award at 2).

15. With the exception of his fifth year, Moskowitz was evaluated annually during his first six years of employment at RWU. (Award at 2-7).

16. During the 2005-2006 academic year, which was Moskowitz's sixth year of employment at RWU, he underwent a cumulative review for the award of tenure in accordance with the CBA. (Award at 6-8; Joint Ex. 4 (CBA), attached to Declaration as Exhibit A, Article VIII, § B.1b at 26).

17. The Faculty Review Committee ("FRC") was created to "... review faculty self studies, and allied materials and reports, submitted by the 6th year …probationary faculty members…." (Joint Ex. 4 (CBA), attached to Declaration as Exhibit A, Article VIII, § B.3.d at 35).

18. The FRC then forwards a recommendation to the appropriate dean regarding the faculty members' application for tenure and/or promotion. (Joint Ex. 4 (CBA), attached to Declaration as Exhibit A, Article VIII, § B.3.d at 36).

19. As part of Moskowitz's sixth year evaluation process and tenure application, the FRC unanimously recommended that Moskowitz be awarded tenure, but denied promotion at that time. (Award at 8; Joint Ex. 19, attached as Exhibit B to Declaration).

20. This tenure review process also required Moskowitz's dean (Ruth Koelle ("Koelle")) to perform an evaluation of his cumulative performance and submit a recommendation to the Provost (or in this case, Interim Provost, Jeffrey B. Martin ("Martin")) regarding Moskowitz's tenure. (Joint Ex. 4 (CBA), attached to Declaration as Exhibit A, Article VIII, § B.3.e at 36).

21. On or about March 1, 2006, Koelle completed her sixth year evaluation of Moskowitz's performance and recommended that Moskowitz not be awarded tenure or promotion. (Award at 7; Joint Ex. 21 (Koelle's 6th Year Evaluation), attached as Exhibit C to Declaration).

22. Next, Martin was required to furnish an "independent report" to Moskowitz and the President of the University, Roy J. Nirschel ("Nirschel"), with a recommendation regarding Moskowitz's tenure. (Joint Ex. 4 (CBA), attached to Declaration as Exhibit A, Article VIII, §§ B.3.f , B.3.i and B.3.k at 36-38).

23. By correspondence dated April 14, 2006, Martin, denied tenure to Moskowitz and formally notified him that his employment was being terminated. (Award at 8; Joint Ex. 33 (Martin's Correspondence), attached as Exhibit D to Declaration).

24. Prior to denying him tenure and terminating Moskowitz's employment at RWU, Martin reviewed Moskowitz's Self-Study, the FRC Report, Moskowitz's response to the FRC Report, Koelle's sixth year evaluation, and Moskowitz's response to Koelle's sixth year evaluation. (Award at 8; Joint Ex. 33 (Martin's Correspondence), attached as Exhibit D to Declaration). Even though Martin was to make an "independent" recommendation regarding Moskowitz's tenure, he also "consulted with" Dean Koelle and President Nirschel prior to preparing his April 14th correspondence to Moskowitz. (RWU's Memorandum at 4 and 10-11; *See*, Joint Ex. 4 (CBA), attached to Declaration as Exhibit A, Aricle VIII, Section B.3.f. at 36-37).

25. Martin's notification did not state that he would be "recommending" to the President and/or Board of Trustees that Moskowitz be denied tenure and not be re-appointed. (Award at 8; Joint Ex. 33 (Martin's Correspondence), attached as Exhibit D to Declaration).

26. Thereafter, pursuant to the CBA, Nirschel was required to review, among other things, the recommendations of Koelle and Martin before making his own final decision on Moskowitz's tenure. (Joint Ex. 4 (CBA), attached to Declaration as Exhibit A, Article VIII, §§ B.3.i and B.3.k at 37-38).

27. After reviewing all of the pertinent information, Nirschel was then required to render a final decision regarding Moskowitz's tenure and notify him of that decision in writing by June 30th. (Joint Ex. 4 (CBA), attached to Declaration as Exhibit A, Article VIII, §§ B.3.i and B.3.k at 37-38).

28. Prior to the 1995-1998 CBA, the President of RWU was not contractually involved in the evaluation process. (Topf Affidavit ¶ 4).

29. During the negotiations for the 1995-1998 CBA, the Union specifically proposed and the parties agreed that only the President and/or the Board of Trustees would have the authority to make all future tenure and/or promotion final decisions. This language and requirement was added to the CBA commencing with the 1995-1998 CBA and remained unchanged in the 2004-2008 CBA. The Union negotiated this language because it believed tenure decisions to be so important as to require them to be made by the Chief Executive Officer (President). Additionally, the President's role in the tenure process creates another layer of review prior to tenure decisions, leaving him the options of either following or rejecting the recommendations of the deans and provost. The current President of RWU is Roy J. Nirschel ("Nirschel"). (Topf Affidavit ¶ 5).

30 In an April 11, 2006 letter to the faculty addressing reappointment and tenure, Nirschel wrote that after the dean makes her recommendation to the Provost, "[t]he Provost then has until May 20th to render a recommendation to the President, and the President then has until June 30th to overrule or endorse this recommendation." (Joint Ex. 41 (Nirshel's Memorandum), attached as Exhibit J to Declaration).

31. Although the CBA requires the President and/or the Board of Trustees to render all final decisions with respect to tenure and/or promotion, throughout Nirschel's term as President of the University, he has failed to adhere to this requirement. In accordance with the CBA, Nirschel routinely notifies faculty members that they have been granted promotion and/or tenure; however, as in Moskowitz's case, his consistent practice has been to refrain from

personally informing faculty members that their bids for tenure and/or promotion had been denied. (Topf Affidavit ¶ 6).

32. Nirschel's failure to make final decisions regarding the denial of tenure and/or promotion caused such confusion that the Union sought clarification from former Provost, Edward J. Kavanagh ("Kavanagh"), regarding the appropriate time to file grievances. In response, on or about April 21, 2005, Kavanagh forwarded a memorandum to James Tackach, the then Union President, explaining that grievances should be filed after receiving an adverse decision from the President and that all grievances filed prior to that decision, would be determined premature by the University. (A true and accurate copy of Kavanagh's April 21, 2005 memorandum to James Tackach is attached to the Declaration of John E. DeCubellis, Jr., Esq. ("Declaration") as Exhibit K). (Topf Affidavit ¶ 7).

33. Notwithstanding Kavanagh's April 21, 2005 memorandum, Nirschel continued to refrain from getting involved in the negative tenure and/or promotion decisions. (Topf Affidavit ¶ 8).

34. The CBA provides that "[g]rievances must be initiated within thirty (30) days after the grievant should have been aware of the event or action which give rise to the grievance or the action which gave rise to the grievance." CBA, Article X, § C.4 at 45.

35. Consequently, on April 17, 2006, relying upon Nirschel's consistent practice of not rendering negative tenure decisions and recognizing that Martin had again exceeded his authority in actually denying tenure to and terminating Moskowitz's employment, the Union filed a Step 1 grievance. The grievance was promptly filed to preserve the 30 day limit and avoid waiting fruitlessly for the President to act and render a written final decision denying Moskowitz's (and other faculty members') tenure and promotion, which he consistently never

did. The grievance challenged RWU's denial of Moskowitz's tenure and termination of his employment. (Topf Affidavit ¶ 11).

36. Prior to the 2005-2006 academic year, even though Nirschel consistently failed to adhere to this requirement of the CBA, no faculty member had pursued a grievance through arbitration relating to the denial of his or her tenure and/or promotion. (Topf Affidavit ¶ 12).

37. During the 2005-2006 academic year, three (3) faculty members, including Moskowitz, finally pursued grievances on the denial of their tenure and/or promotion through arbitration, and challenged the fact that Martin, rather than Nirschel or the Board of Trustees, had made the final decisions regarding their tenure and/or promotion. (Topf Affidavit ¶ 13).

38. On or about May 9, 2006, Martin denied the Step I grievance and the Union filed a Step II grievance, which was denied by Nirschel on June 6, 2006. (Joint Exhibits 36 ( Martin's Step I Denial), 37 (Union's Step II Grievance) and 38 (Nirschel's Step II Denial), attached as Exhibits F, G and H to Declaration, respectively).

39. In accordance with the CBA, on or about June 9, 2006, the Union next filed the grievance with the American Arbitration Association ("AAA"). (Joint Ex. 39 (Demand for Arbitration), attached as Exhibit I to Declaration).

40. The matter was assigned to Arbitrator Lawrence T. Holden, Jr. ("Arbitrator Holden") and Arbitration hearings were previously held in this matter on February 22, 2007, May 8, 2007, June 11, 2007 and June 18, 2007. (Declaration, ¶ 5).

41. In its Demand for Arbitration, the Union specifically stated as the nature of the dispute that "[t]he denial of tenure to [Moskowitz] is arbitrary and capricious and in violation of specifically, but not exclusively, Articles VIII and IX of the contract." (Joint Ex. 39, attached as Exhibit I to Declaration).

42. Throughout the entire arbitration process, which spanned over more than one year, RWU never requested any further clarification as to its alleged violations of the CBA, and more specifically, the alleged violations of Articles VIII and IX. (Declaration, ¶ 6).

43. The issues presented to Arbitrator Holden were

1. "Did the University act arbitrarily or capriciously in denying tenure to Professor Moskowitz in April of 2006?

2. If so, what shall be the contractually authorized remedy?"

(Award at 8).

44. Arbitrator Holden resolved the grievance in favor of the Union and issued an Arbitration Award on November 2, 2007. Arbitrator Holden essentially found that RWU had acted arbitrarily and capriciously in denying tenure to Moskowitz because it had violated the Article B 3.i of the CBA by not having the President make the final decision regarding Moskowitz's tenure. (Award at 19-20 and 28).

45. As a result, Arbitrator Holden determined that Moskowitz should be reinstated to his probationary status and undergo another tenure review in accordance with the contractual criteria and contractual process. Arbitrator Holden further determined that Moskowitz should be made whole, subject to the customary deductions. (Award at 28).

Respectfully Submitted,

ROGER WILLIAMS UNIVERSITY
FACULTY ASSOCIATION (NEARI/NEA)

By its Attorney,

/s/ John E. DeCubellis, Jr._____________
John E. DeCubellis, Jr., Esq. (RI Bar No. 3327)
General Counsel
NEARI
99 Bald Hill Road
Cranston, Rhode Island 02920
(401) 463-9630

Dated: April 30, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), including counsel for Plaintiff/Counterclaim Defendant, Joseph P. McConnell, Esq., MORGAN, BROWN & JOY, on this 30th day of April, 2008.

/s/ John E. DeCubellis, Jr._____________
John E. DeCubellis, Jr.