**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **ROGER WILLIAMS UNIVERSITY,**<br><br>**Plaintiff/Counterclaim Defendant,**<br><br>**v.**<br><br>**ROGER WILLIAMS UNIVERSITY FACULTY ASSOCIATION (NEARI/NEA)**<br><br>**Defendant/Counterclaim Plaintiff.** | **07-440-ML-DLM** |

**AFFIDAVIT OF MEL A. TOPF IN SUPPORT OF DEFENDANT/COUNTERCLAIM PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, Mel A. Topf, having been duly sworn, do depose and say that:

1. I am a Full Professor in the College of Arts and Sciences at Roger Williams University (hereafter referred to as "RWU" or the "University") and have been employed by the University since 1969.

2. While employed at RWU, I have been an active member of the Roger Williams University Faculty Association (NEARI/NEA) (the "Union"), which is the exclusive bargaining agent for the RWU faculty, have served as its President throughout David Moskowitz's ("Moskowitz") grievance. It is in this capacity that I have full and personal knowledge of the facts recited herein.

3. At all pertinent times hereto, the Union and RWU were parties to the 2004-2008 Collective Bargaining Agreement (the "CBA").

4. Prior to the 1995-1998 CBA, the President of RWU was not contractually involved in the evaluation process.

5. During the negotiations for the 1995-1998 CBA, the Union specifically proposed and the parties agreed that only the President and/or the Board of Trustees would have the authority to make all future tenure and/or promotion final decisions. This language and requirement was added to the CBA commencing with the 1995-1998 CBA. The Union negotiated this language because it believed tenure decisions to be so important as to require them to be made by the Chief Executive Officer (President). Additionally, the President's role in the tenure process created another layer of review prior to tenure decisions, leaving him the options of either following or rejecting the recommendations of the deans and provost. The current President of RWU is Roy J. Nirschel ("Nirschel").

6. Although the CBA requires the President and/or the Board of Trustees to render all final decisions with respect to tenure and/or promotion, throughout Nirschel's term as President of the University, he has failed to adhere to this requirement. In accordance with the CBA, Nirschel routinely notifies faculty members that they have been granted promotion and/or tenure; however, as in Moskowitz's case, in all instances of which the Union is aware, Nirschel's consistent practice has been to refrain from personally informing faculty members that their bids for tenure and/or promotion had been denied.

7. Nirschel's failure to make final decisions regarding the denial of tenure and/or promotion caused such confusion that the Union sought clarification from former Provost, Edward J. Kavanagh ("Kavanagh"), regarding the appropriate time to file grievances. In response, on or about April 21, 2005, Kavanagh forwarded a memorandum to James Tackach, the then Union President, explaining that grievances should be filed after receiving an adverse decision from the President and that all grievances filed prior to that decision, would be determined premature by the University. (A true and accurate copy of Kavanagh's April 21, 2005 memorandum to James Tackach is attached to the Declaration of John E. DeCubellis, Jr., Esq. ("Declaration") as Exhibit K).

8. Notwithstanding Kavanagh's April 21, 2005 memorandum, Nirschel continued to refrain from getting involved in the negative tenure and/or promotion decisions.

9. By correspondence dated April 14, 2006, the Interim Provost, Jeffrey B. Martin ("Martin"), denied tenure to Moskowitz and formally notified him that his employment was being terminated.

10. The CBA provides that "[g]rievances must be initiated within thirty (30) days after the grievant should have been aware of the event or action which give rise to the grievance or the action which gave rise to the grievance." CBA, Article X, § C.4 at 45.

11. Consequently, on April 17, 2006, relying upon Nirschel's consistent practice of not rendering negative tenure decisions and recognizing that Martin had again exceeded his authority in actually denying tenure to and terminating Moskowitz's employment, the Union filed a Step 1 grievance. The grievance was promptly filed to preserve the 30 day limit and avoid waiting fruitlessly for the President to act and render a written final decision denying Moskowitz's (and other faculty members') tenure and promotion, which he consistently never did.

12. Prior to the 2005-2006 academic year, even though Nirschel consistently failed to adhere to this requirement of the CBA, no faculty member had pursued a grievance through arbitration relating to the denial of his or her tenure and/or promotion.

13. During the 2005-2006 academic year, three (3) faculty members, including Moskowitz, finally pursued grievances on the denial of their tenure and/or promotion through arbitration, and challenged the fact that Martin, rather than Nirschel or the Board of Trustees, had made the final decisions regarding their tenure and/or promotion.

MEL A. TOPF

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

Subscribed and sworn to before me in Bristol, RI this 28th day of April, 2008.

NOTARY PUBLIC
MY COMMISSION EXPIRES: 05/24/10