EXHIBIT G

TO: President Nirschel

FROM: Mel Topf
President, RWUFA

DATE: May 15, 2006

RE: Grievance of Prof. Moskowitz

I write to offer a summary of our chief arguments that, at present, we expect to raise at the grievance hearing this Thursday.

We understand that the administration has considerable discretion regarding promotion decisions and regarding denial of a non-tenured faculty member's application for tenure. Our contract provides only that the "termination of non-tenured MBUs . . . not be arbitrary or capricious" (line 1953).

It is our burden to show that the decisions to deny Prof. Moskowitz both tenure and promotion were indeed arbitrary and capricious. To show this we must demonstrate either that established procedures were violated or that the administration failed to give Prof. Moskowitz adequate, or any, notice of the expectations that Prof. Moskowitz would have to meet to achieve tenure and to achieve promotion. Both, we believe, are true here.

The chief abuse of the administration's discretion here is a matter of due process. The Provost, in his denial of Prof. Moskowitz's grievance (at step 1), identified the "principle issue" to be the "lack of scholarly progress" (Provost's memo, May 9). Prof. Moskowitz, we believe, was given insufficient, inaccurate, and indeed misleading notice of what is acceptable scholarly progress.

A crucial document that evidences this is the Dean's prior (February 2004) comprehensive evaluation report. That report expresses no concern about scholarly progress, offers no recommendations about Prof. Moskowitz's scholarly activities, indeed barely mentions the subject at all and never in a negative context, never indicating there may be a problem regarding tenure or promotion. Under the section on "evaluation of effectiveness in scholarship, professional and/or creative activities," the Dean notes only that "these activities have had to be postponed this last year due to his efforts to establish the MPA." Under the section on "professional goals stated in the last evaluation," the Dean observes only that he "had been working on an article for publication." In the final section, "summary of recommendations and justification, the Dean notes merely that he "increased his activities in . . . research/professional development" and that he intends next year, "if not Coordinator, to resume his professional development activities . . ."

That is all: we have no statement on whether Prof. Moskowitz should be making more scholarly progress. We have no expression of concern over any purported lack of such progress. We have no advice, no recommendations, no warnings. In short, no notice. Further, throughout the Dean's report, there is little but praise for the service that Prof. Moskowitz has performed, with little, in fact no, suggestion that, for example, he should cut back on service to pursue scholarly activity.

Now comes the Dean's report of March 2006 denying Prof. Moskowitz both tenure and promotion. Out of nowhere we read at length about the now serious, in fact fatal, "lack of research." Now there are whole paragraphs on the purported absence of scholarship, about his rejected articles and the non-productive nature of his "scholarly agenda." Now scholarship is "one of his weakest areas." Now "all efforts" to impress on him the importance of research "seem to be ineffective." And now we are told that this purported defect had been "noted" is all past evaluations. We see how it was "noted" in the 2004 report. Now the Dean says that her 2004 recommendations "*centered* on strengthening his scholarly activity." (Italics added) In fact such recommendations, if there at all, were hardly the "center" of the Dean's recommendations.

Further, an important step in the evaluation process where Prof. Moskowitz could have been, and should have been, notified regarding publishing or other expectations, is provided by the contract, lines 1145-47, requiring a "review immediately preceding the final probationary review," which *"should indicate any weaknesses or unmet expectation that could serve as an impediment to achieving tenure."* (Italics added.) This step in the process was either violated or disregarded, or both.

This does not meet the procedural requirement that evaluations for promotion or tenure be "cumulative" (contract, line 1716), or with the requirement that the Dean "meet and discuss" with Prof. Moskowitz the criteria by which he will be evaluated (line 1326). It does not accord with the crucial prohibition against creating "a publish or perish atmosphere" at this university (contract, line 1259).

These clear procedural violations warrant a reversal of the decision to deny Prof. Moskowitz tenure and promotion. Far from being merely technicalities, they evidence fundamental unfairness in the way he has been treated. Further, it is not a matter of giving tenure and promotion to a faculty member not deserving of them "merely" because of these serious procedural violations. Prof. Moskowitz' record of contributions to the University, excellence in teaching, and commitment to his program are of the highest quality.