UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ROGER WILLIAMS UNIVERSITY,

v. C.A. No. 07-440 ML

ROGER WILLIAMS UNIVERSITY
FACULTY ASSOCIATION (NEARI /
NEA).

**MEMORANDUM AND ORDER**

Roger Williams University (the "University") moves for summary judgment to vacate the Arbitrator's decision regarding the University's tenure dispute with the University Faculty Association (NEARI/NEA) (the "Union"). The Union cross-moves for summary judgment and asks that the Arbitrator's award be confirmed. For the reasons set forth below, the University's motion is DENIED and the Union's motion is GRANTED.

I. Background

The University is a private, four year university located in Bristol, Rhode Island. The Union is the exclusive bargaining agent for the teaching faculty at the University. The parties have agreed to a collective bargaining agreement[1] (the "CBA") which governs tenure decisions, the grievance process and arbitration, among other issues. Regarding tenure, the CBA requires that probationary faculty members be considered for tenure during their sixth year. (CBA, Art. VIII, § B.1.b.)[2] If tenure is denied, the faculty

[1] Formally, The Roger Williams University Faculty Association NEARI/NEA 2004-2008 Contract with the Board of Trustees of Roger Williams University in Bristol, Rhode Island. (CBA.)
[2] The CBA is attached to the Declaration of Joseph P. McConnell as Exhibit B.

member must leave the university, with the option of remaining for one terminal year. (CBA, Art. VIII, § B.3.i.) Tenure review involves review at four levels. (CBA, Art. VIII, § B.3.) First, the Faculty Review Committee ("FRC") evaluates the probationary faculty member and sends a report to the Dean of the candidate's department. (CBA, Art. VIII, § B.3.d.) Then, the Dean reviews the FRC's report and prepares her own report, which she sends to the probationary faculty member and to the Provost. (CBA, Art. VIII, § B.3.e.) After receiving the FRC's and Dean's reports, the Provost is required to write an "independent" report and send that report to the candidate by May 20th of the relevant academic year. (CBA, Art. VIII, §§ B.3.e., B.3.f.) Finally, the University President makes the final decision and is required to notify the candidate "in writing" by June 30th. (CBA, VIII, § B.3.i.) The CBA provides that, in making his or her decision, the President consider:

> (1) the criteria in [the CBA]; (2) the recommendations of deans and the Chief Academic Officer[, the Provost]; (3) the evaluative background of the candidate; and (4) the specifically identified interests of the University. (CBA, Art. VIII, § B.3.i.)

In the case at hand, Assistant Professor David Moskowitz was considered for tenure in his sixth year, 2005-2006. The FRC recommended Moskowitz for tenure, but the Dean did not. After consulting with the President, the Provost wrote to Moskowitz on April 14, 2006, stating that he would not receive tenure. Although the Provost testified during the arbitration proceedings that he consulted with the President, the record is devoid of evidence of the substance of that consultation.

The CBA gives the Union the right to submit grievances regarding the University's administrative actions, including decisions about tenure. (CBA, Arts. X,

VIII, § B.3.i.) Accordingly, on April 17, 2006, the Union filed a Step 1 grievance[3] regarding the denial of tenure as set forth in the Provost's letter of April 14, 2006. On May 9, 2006, Provost Martin denied the grievance. A few days later, on May 15, 2006, the Union sent a memo to the President outlining its Step 2 grievance. By way of a letter dated June 6, 2006, the President denied the grievance. The President responded to the argument that Moskowitz did not receive adequate notice of deficiencies during his probationary period by noting that the record included written statements giving Moskowitz notice. The President concluded that the decision to deny tenure was not arbitrary or capricious.

The Union filed a demand for arbitration on June 9, 2006. The issues presented to Arbitrator Lawrence T. Holden were:

> - "Did the University act arbitrarily or capriciously in denying tenure to Professor David Moskowitz in April of 2006?"
>
> - "If so, what shall be the contractually authorized remedy?"

(Award 1.)[4] The Arbitrator concluded that the University's action was arbitrary and capricious because the President did not make the final decision on tenure, thereby violating Art. VII, § B.3.i. of the CBA. (Id. at 20, 28.) As a remedy, the University was ordered to review Moskowitz's case for tenure again after an additional year. (Id. at 28.) The University now seeks to have this Court vacate that award.

---

[3] The CBA provides for three levels of grievance filings. (CBA, Art. X, § B.) In Step 1, the grievance is filed with the Chief Academic Officer (the Provost) and the grievant's Dean. (See id.) After meeting with the President of the Union and / or the Grievance Chair, the Provost and the Dean must communicate their decision to the Grievance Chair. (Id.) If the grievance is not resolved at Step 1, the grievant may proceed to Step 2 by filing a "formal grievance" with the University President. (See id.) The President is then required to meet with the President of the Union and / or the Grievance Chair to try to resolve the grievance. Within ten working days of that meeting, the University President must make a decision on the grievance in writing. (See id.) Finally, in Step 3, if the grievant is unsatisfied by the President's decision, he or she may submit the grievance to arbitration. (See id.)

[4] The Award is attached to the Declaration of Joseph P. McConnell as Exhibit A.

II. Analysis

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. Once the movant has made the requisite showing, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Cont'l Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991). Cross-motions for summary judgment do not change the standard for granting summary judgment. Fed. R. Civ. P. 56(c); Latin American Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007).

Judicial review of arbitral awards is "'extremely narrow and exceedingly deferential.'" Bull HN Info. Sys. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000). A court's review of an arbitration award is highly deferential because the parties "have contracted to have disputes settled by an arbitrator" and thus, "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 37-38 (1987). While

the arbitrator's award must "draw its essence from the contract," to the extent that the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Id. at 38. A successful challenge to an arbitration award generally requires a showing that the award is "'(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact.'" Advest, Inc. v. McCarthy, 914 F.2d 6, 8-9 (1st Cir. 1990). Moreover, an arbitral award is subject to being vacated when an "award is contrary to the plain language of the collective bargaining agreement" or where "it is clear from the record that the arbitrator recognized the applicable law – and then ignored it." Id. at 9.

A. Whether the University's Actions were Arbitrary and Capricious

The first issue to be considered by this Court is whether the Arbitrator exceeded his authority by finding that the University's actions were arbitrary and capricious. The First Circuit has found that "arbitrary and capricious" can mean a significant departure from the terms of a contract.[5] Advest, 914 F.2d at 9 n.6 (finding that an arbitrator's award is arbitrary and capricious when it is contrary to the plain meaning of the contract). Here, the Arbitrator applied the standard that the University acted arbitrarily and capriciously by taking actions which significantly differed from the CBA's requirements.

[5] In Advest, the First Circuit noted that an arbitrator's actions could be found arbitrary and capricious because the arbitrator did not follow the terms of the contract, not that a party to the contract acted arbitrarily and capriciously by significantly departing from the terms of the contract. 914 F.2d at 9 n.6. However, the First Circuit's analysis indicates that departing from the contract can be considered arbitrary and capricious. See id.

The Court finds that the Arbitrator's employment of this standard is a reasonable application of the law.

Specifically, the Arbitrator found that the University's actions were arbitrary and capricious because the University did not comply with the CBA's tenure denial process. The Arbitrator noted that there was

> no evidence in this case that the President . . . made the final decision in the grievant's tenure / promotion case in accordance with the criteria contained in Art. VIII, Sec. B.3.i. of the contract; further there [was] no evidence that Provost Martin was authorized by the President or the Board to write a letter on their behalf detailing their judgment. (Award 19.)

Given the deferential standard of review of an arbitrator's interpretation of a contract, the Arbitrator's decision that the President's actions were contrary to the process prescribed by the CBA must be upheld. Even if the court disagrees with the arbitrator's interpretation of the contract, his interpretation stands if the arbitrator's interpretation is arguably correct. See Bull HN Info. Sys., 229 F.3d at 330 ("[A]s long as the arbitrator is 'even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'")

Here, the Arbitrator reasonably found that the President did not comply with the contract terms. The CBA requires both that the President consider all four criteria set out in the CBA and that he make the final tenure decision. (CBA, Art. VIII, § B.3.i.) With regard to the four criteria, there is no evidence that the President considered any of them. As in the Arbitrator's interpretation of the contract, the court must deferentially review the Arbitrator's finding of facts. United Paperworkers Int'l Union, 484 U.S. at 37-38 ("[I]t is the arbitrator's view of the facts and of the meaning of the contract that [the

parties] have agreed to accept."). Although, as the University points out, there is no evidence that the President did *not* consider all the criteria the CBA required him to consider, there is also no evidence that he *did* conduct the thorough review required by the CBA. The only evidence is the Provost's testimony that he had "conversations" with the President before issuing the Provost's report. (Declaration of Joseph P. McConnell Ex. I, 180-81.) Contrary to the University's assertion in its brief, the Arbitrator did not ignore this evidence. The Arbitrator expressly considered and rejected this evidence as inadequate to show compliance with the CBA: "Consulting with the President while making a final decision at the Provost level is not consistent with the contractual process requiring the President / Board to make the final decision in accordance with the specified contractual criteria . . . . " (Award 19 n.2.) Clearly, a conversation between the Provost and President does not definitively prove that the President conducted his own, thorough review. Thus, the Arbitrator reasonably made the inference that the President did not consider the four criteria required by the CBA for a final tenure determination.

The Arbitrator also "arguably constru[ed]" the CBA in finding that the Provost, not the President, made the final tenure determination. See United Paperworkers Int'l Union, 484 U.S. at 38. Provost Martin's letter appears final on its face. The language is definitive and explicitly formal: "Therefore, I formally notify you that you will not be reappointed to the faculty" and goes on only to give Moskowitz the option of working a terminal year. (Declaration of Joseph P. McConnell Ex. D.) The Arbitrator concluded, "one is left with the distinct impression that Provost Martin reviewed the grievant's file and made the decision not to reappoint the grievant." (Award 20.)

The University offers that the President complied with the CBA's requirements by writing a letter on June 6, 2006. This letter was written and sent within the deadline of June 30, 2006 set by the CBA. (See CBA, Art. VIII, § B.3.i.) The University contends that the Arbitrator simply missed this fact and that, as a result, his Award should be vacated as "unfounded in reason and fact." See Advest, 914 F.2d at 8. Although the Arbitrator did not mention this letter at any point in his opinion, this Court must give the Arbitrator the benefit of the doubt. His decision must be upheld as long as the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority . . . . " United Paperworkers Int'l Union, 484 U.S. at 38.

It is reasonable to conclude that the President's June 6th letter was issued as part of the grievance procedure and not as part of the tenure decision. First, the President's letter is framed as a response to a grievance. It is titled, "Step 3 Grievance Answer"[6] and ends with the sentence: "Respectfully, your grievance is denied." (Union Cross Mot. for Summ. J. Ex. H.) Secondly, the substance of the letter specifically addresses Moskowitz's complaint in his grievance that the University did not provide him with "due process" by failing to give him adequate notice of insufficiencies. (Id.) Although the letter makes clear that the President agreed with the denial of tenure, it is a stretch to argue that the President intended this letter to satisfy his responsibilities in denying tenure in accordance with Art. VIII, § B.3.i. of the CBA.

In short, none of the situations identified by the First Circuit as justifying vacating an arbitrator's decision apply. It is not clear that the Arbitrator's decision is '"(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or

[6] The University states that the President simply made a mistake by calling the grievance a "Step 3 Grievance" instead of a "Step 2 Grievance."

group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact.'" See Advest, 914 F.2d at 8-9. Accordingly, this Court upholds the Arbitrator's finding that the University denied Professor Moskowitz's tenure arbitrarily and capriciously.

Having upheld the substance of the Arbitrator's decision, this Court will briefly address the University's contention that the Arbitrator erred in deciding this case solely on an issue which the Union never broached nor gave the University an opportunity to address during the grievance period. The University argues that the Arbitrator should have based his decision on the central question of whether Moskowitz deserved tenure, not on the President's procedural mistake.

The University points out that the Union never complained about the President's failure to perform the role required of him by the CBA during the pre-arbitration grievance process. The Union could have alerted the University to the President's failure to make the final tenure determination prior to the June 30, 2006 deadline in its grievance letters in April and May.[7] At the least, according to the University, the Union should have waited to file its demand for arbitration until after the June 30th deadline to give the President a chance to comply with the CBA's requirements. Instead, the Union filed the demand for arbitration on June 9, 2006.

The University's contention that the timing of the demand for arbitration did not give the University a full opportunity to comply with the CBA does not support vacating the Arbitrator's award. As discussed above, the Arbitrator found that the Provost's letter on May 9, 2006 was the University's final word on the tenure decision. It was reasonable

[7] Pursuant to the CBA, the President had until June 30, 2006 to make the final tenure determination. (CBA, Art VIII, § B.3.i.)

for the Arbitrator to find that the University, including the President, had no more to say on the subject. Indeed, the President's response to the Union's grievance on June 6, 2006 confirms the impression that the final decision had already been made.

Because the Union did not raise the President's failure to fulfill his responsibilities under Art. VIII, § B.3.i. of the CBA, the University argues that the Union is estopped from raising this issue in the arbitration. The University provides no authoritative law for this proposition. In any case, the University's compliance with Article VIII was unquestionably a central issue in the arbitration. In its Demand for Arbitration, the Union specifically claimed that the "denial of tenure" was "arbitrary and capricious and in violation of . . . Articles VIII and IX of the contract." (Union Cross Mot. for Summ. J. Ex. I.) The Arbitrator directly addressed this claim by finding that the President failed to comply with Article VIII of the CBA and therefore found that the University's decision was arbitrary and capricious. As discussed above, the Arbitrator's decision in this regard was within his discretion and must be upheld by this Court.

B. Whether the Remedy was Proper

The scope of a court's standard of review of an arbitrator's remedy is also narrow. Where the parties have agreed to consign the fashioning of a remedy to the arbitrator, "courts have no authority to disagree with [the arbitrator's] honest judgment in that respect. If the courts were free to intervene on these grounds, the speedy resolution of grievances by private mechanisms would be greatly undermined." United Paperworkers Int'l Union, 484 U.S. at 38. The remedy must draw its "essence" from the collective bargaining agreement. See United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960). It certainly cannot contradict the "express language" of the

agreement. Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 945 (1st Cir. 1988) (quoting Bruno's, Inc. v. United Food & Commercial Wkrs. Int'l, 858 F.2d 1529, 1531 (11th Cir. 1988)). However, where the CBA is silent, the Supreme Court has emphasized that "[t]here is the need for flexibility" "when it comes to formulating remedies." See United Steelworkers of Am., 363 U.S. at 597.

In this case, the CBA is silent as to the remedy for the University's failure to abide by the tenure denial process outlined in the CBA. The University protests that the Arbitrator's remedy, by effectively giving Professor Moskowitz eight years in which to be evaluated for tenure,[8] contradicts the language of the CBA. It is true that the CBA gives candidates six years to achieve tenure. The CBA, however, does allow an extension of time to evaluate tenure in some cases. Arguably, Moskowitz's situation falls under the provision that allows evaluation timelines to be extended in an "emergency." (CBA, Art. VIII, § B.3.g.) More importantly, the issue at hand is how to remedy a failure of process due under the CBA, not how many years the CBA requires for tenure consideration. On that issue, the CBA does not give clear direction. In sum, the Arbitrator's remedy does not contradict the express language of the CBA. See Georgia-Pacific Corp., 864 F.2d at 945.

This Court finds that the Arbitrator's remedy does draw its "essence" from the CBA. See United Steelworkers of Am., 363 U.S. at 597. Here, the Arbitrator found that the tenure evaluation was conducted improperly. Requiring, as the Arbitrator has, that the evaluation be redone properly is a reasonable remedy for the deficiency. The additional year that the Arbitrator gave Professor Moskowitz in which to be evaluated for

[8] The eight years comprise the standard six years probation, the terminal year, and the additional year granted by the Arbitrator.

tenure may not be necessary. Nevertheless, a year certainly falls within the "flexibility" permitted to an arbitrator in formulating a remedy. See United Steelworkers of Am., 363 U.S. at 597. The Court will not disagree with the Arbitrator's "honest judgment" that a year is needed to reevaluate Moskowitz for tenure. See United Paperworkers Int'l Union, 484 U.S. at 38.

## III. Conclusion

This Court upholds both the Arbitrator's finding that the University acted arbitrarily and capriciously in denying tenure to Moskowitz and the Arbitrator's remedy that Moskowitz be reevaluated for tenure after an additional year. Accordingly, the University's motion for summary judgment is denied and the Union's motion for summary judgment is granted.

SO ORDERED

Mary M. Lisi
United States District Judge
July 30, 2008